TCK

**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher Allen Adams, | No. CV 05-0170-PHX-DGC (LOA) |
| Plaintiff, | **ORDER** |
| vs. | |
| Johnny Walker, | |
| Defendant. | |

Christopher Allen Adams, confined in the Maricopa County Jail when he filed this action, claims in his Amended Complaint that Defendant acted with deliberate indifference towards his serious medical needs. Pending is Defendant's Motion For Summary Judgment (Dkt. #20). The Court will grant Defendant's Motion.

**I. Procedural Background.**

Plaintiff filed an Amended Complaint (Dkt. #7) alleging that Defendant Walker acted with deliberate indifference towards his serious medical needs during his two admissions to Maricopa County Medical Center in November, 2004. Plaintiff alleges that in November 2004 he was seen by medical staff at the Maricopa County Jail because he was having severe chest pain. Plaintiff also contends that he had a severe infection in his left arm that is resistant to most antibiotics. Plaintiff contends that as a result of the infection, he had suffered complications including blood infections, sepsis, endocarditis, pneumonia and blood clots (Amend. Compl. at ¶4). Plaintiff further contends that after medical staff at the jail

reviewed his medical history, they transported him to Maricopa County Medical Center emergency department.

Upon his arrival, Plaintiff alleges that he was transferred to the Cardiac Care Unit, placed on a heart monitor and given IV antibiotics. Thereafter, Plaintiff alleges that he was admitted to the hospital (Amend. Compl. at ¶4A). Upon admission, Dr. Johnny Walker was assigned as Plaintiff's attending physician. Plaintiff asserts that Dr. Walker was aware of Plaintiff's medical history from his previous visits to the hospital (Amend. Compl. at ¶4A). Plaintiff alleges that Dr. Walker did not want to admit him to the hospital because of Plaintiff's past history (Amend. Compl. at ¶4A). Plaintiff contends that nursing staff observed him convulsing and they called a physician to observe him. Plaintiff contends that the physician observed his symptoms including severe pain, shaking and his inability to breathe (Amend. Compl. at ¶4B). The physician gave him a shot of Adavan to calm him (Amend. Compl at ¶4B). Plaintiff asserts that after the physician left, nursing staff came to check on him and took his vital signs. Plaintiff asserts that his pulse was higher, his blood pressure was seriously low, he was vomiting and his body temperature was high (Amend. Compl. at ¶4B-C). Plaintiff contends that the next morning Defendant Walker saw him at the hospital. Plaintiff described to Defendant the symptoms he was experiencing. Plaintiff contends that Defendant Walker informed him that his symptoms were caused by anxiety and thereafter he discharged Plaintiff. Plaintiff claims that Dr. Walker inappropriately discharged him and "failed to take reasonable measures to abate harm" to Plaintiff (Amend. Compl. at ¶4D).

Plaintiff asserts that when he was released from the hospital on November 27, 2004, he was too weak to walk and two officers had to hold him up (Amend. Compl. at ¶4D). Plaintiff asserts that immediately upon his return to the jail he went to the medical unit. Plaintiff alleges that medical staff at the jail took his vital signs, which established that Plaintiff had a very high pulse, low blood pressure and a high fever (Amend. Compl. at ¶4D). Plaintiff contends that the jail medical staff directed him to be transported back to the hospital.

- 2 -

Upon his return to the hospital, Plaintiff was placed under observation and later admitted. Plaintiff contends that he was diagnosed with sepsis, an infection in his blood, as well as an infection in his left arm and hypotension. Plaintiff asserts that he spent 5 days in the hospital (Amend. Compl. at ¶4D). Plaintiff further alleges that Dr. Walker prevented him from accessing adequate pain medication during his admission (Complaint at ¶4E). Plaintiff contends that Defendant Walker acted with deliberate indifference towards his serious medical needs by intentionally delaying and denying Plaintiff medical treatment (Amend. Compl. at ¶4F).

Defendant answered the Amended Complaint pursuant to the Court's screening order (Dkt. #8) and deadlines for discovery and dispositive motions were set (Dkt. #11). Defendant moved for summary judgment (Dkt. #20), alleging that he was not deliberately indifferent to Plaintiff's medical needs. In support, Defendant submits the affidavit of Dr. Paul E. Stander, Chief Medical Officer of Banner Good Samaritan Medical Center (Exhibit 1) and Maricopa Integrated Health System Medical Records (Dkt. # 2 through #19).

The Court issued an order informing Plaintiff about his rights and obligations to respond to Defendant's motion (Dkt. #21). On September 19, 2006, Plaintiff filed a response to the motion (Dkt. #23). On October 17, 2006, Defendant filed a reply (Dkt. #24).

**II. Summary Judgment Standard.**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). When considering a summary judgment motion, the evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). These inferences are limited, however, "to those upon which a reasonable jury might return a verdict." Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1220 (9th Cir. 1995).

1    Rule 56(c) mandates the entry of summary judgment against a party who, after
2 adequate time for discovery, fails to make a showing sufficient to establish the existence of
3 an element essential to that party's case, and on which the party will bear the burden of proof
4 at trial. Celotex, 477 U.S. at 322-23. Rule 56(e) compels the nonmoving party to "set forth
5 specific facts showing that there is a genuine issue for trial" and not to "rest upon the mere
6 allegations or denials of [the party's] pleading." The nonmoving party must do more than
7 "simply show that there is some metaphysical doubt as to the material facts." Matsushita
8 Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). There is no issue
9 for trial unless there is sufficient evidence favoring the non-moving party. Anderson, 477
10 U.S. at 249. Summary judgment is warranted if the evidence is "merely colorable" or "not
11 significantly probative." Id. at 249-50.

**III. Analysis.**

13    Plaintiff's deliberate indifference claim against Defendant appears to be based on two
14 distinct occurrences. The first incident involves Plaintiff's hospitalization on November 26,
15 2004 through the time of his discharge on the morning of November 27, 2004 (Amend.
16 Compl. at ¶4 through 4D). Plaintiff alleges that Defendant Walker acted with deliberate
17 indifference by releasing him from the hospital on November 27, 2004. The second incident
18 involves Plaintiff's subsequent hospitalization later in the day on November 27, 2004,
19 through December 1, 2004 (Amend. Compl. at ¶4D through 4 F). Plaintiff alleges that
20 Defendant Walker acted with deliberate indifference by intentionally interfering with his
21 medical treatment and by his failure to provide pain medication in a timely manner (Amend
22 Compl. at ¶4E-F).

**A. Defendant's Evidence.**

24    Plaintiff was examined at Maricopa County Medical Center on November 26, 2004,
25 complaining of dizziness and vomiting blood (Def Exhibit 2). Emergency Room Records
26 ("ER") (Def. Exhibit 2), state that Plaintiff is a 24 year-old male with a complicated medical
27 history (Def. Exhibit 7 at ¶1). Plaintiff's chief complaint when he entered the ER was that
28 he was experiencing dizziness and hematemesis. The record reflects that Plaintiff had

- 4 -

1 previously been diagnosed with hemorrhagic gastritis, was prescribed Zantac and sent back
2 to prison. Plaintiff vomited blood on the morning of November 26, 2006. Plaintiff also
3 complained of chest pains, with no radiation to the arm or jaw, which had continued for three
4 days (Def. Exhibit 2 at ¶1).

5 The ER records reflect that Plaintiff has a medical history that is significant for
6 endocarditis, in that he is line dependant (PICC) for antibiotics because he remains culture
7 positive with resistant staph aureus (Def. Exhibit 2 at ¶1). When Plaintiff arrived at the
8 emergency department, he had no fever or chills, some chest pain, no palpitations, no cough
9 or shortness of breath and no back pain. Plaintiff complained to the attending physician,
10 Bruce Horwood, that he has experienced hematemesis and dark and bloody stools. At the
11 time he was seen in the ER, his blood pressure was 136/83, his pulse was 102, his respiratory
12 rate was 17 and he was not in acute pain.(Def. Exhibit 2).

13 The emergency room attending physician admitted Plaintiff to the hospital for
14 observation (Affidavit of Stander at ¶2; Def. Exhibit 2 at ¶2; Def. Exhibit 3). Defendant
15 Johnny Walker was the medical resident at the Maricopa County Medical Center assigned
16 to Plaintiff upon his admission. At the time, Plaintiff's vital signs indicated that he was
17 stable and did not indicate that he was having any significant upper intestinal bleeding
18 (Affidavit of Stander at ¶2; Def. Exhibit 3).

19 The "short admission" data form reflects that Plaintiff's chief complaint upon
20 admission was his swollen arm. He was admitted for 23 hours of observation for left arm
21 cellulitis (Affidavit of Stander at ¶2; Def. Exhibit 3 at ¶2). Defendant Walker's report
22 reflects that Plaintiff's arm swelling was not improving following his surgery on
23 November 16, 2006 (Def. Exhibit 3 at¶1). Defendant examined cultures taken from
24 Plaintiff's wound site, which established that the strain of infection with which Plaintiff was
25 infected was resistant to the antibiotic drug Augmentin prescribed to him by jail staff
26 (Plaintiff's history and physical; Def. Exhibit 4 at ¶2). Defendant Walker's discharge report
27 reflects that he prescribed to Plaintiff the antibiotic drug Bactrim for 14-21 days to heal
28 Plaintiff's infection and stated that there was no further need for a PICC line. (Def. Exhibit

1  3 at ¶2). The second page of Defendant Walker's discharge summary reflects that Plaintiff's
2  complaint of vomiting blood was assessed by performing a stomach lavage procedure. No
3  blood was found in the stomach (Affidavit of Stander at ¶2; Def. Exhibit 3 at ¶2).
4  Additionally, Plaintiff's vital signs were stable. (Id.). The discharge summary performed by
5  Defendant Walker on November 26, 2004 also reflects that Defendant performed an
6  electrocardiogram, which was determined to be normal with no increase in cardiac enzymes
7  (Affidavit of Stander at ¶2; Def. Exhibit 4 at ¶2).

8  Defendant has also submitted reports from nursing staff (Def. Exhibit 5). The records
9  reflect that Plaintiff was observed to be anxious and shaking at 3:30 a.m. on November 27,
10 which alerted nurses to call the medical resident on duty at 3:55 a.m. Plaintiff was
11 administered, via his existing IV line, the anti-anxiety drug Antivan. The record reflects that
12 at 4:15 a.m. Plaintiff was observed to be afebrile and in no respiratory distress (Stander
13 Affidavit at 4; Exhibit 5 at ¶6). During his admission, Plaintiff was prescribed Phenergan,
14 which is primarily used to treat nausea and vomiting; Tylenol and 2 tablets of Percocet, a
15 prescription pain reliever, at 1:15 a.m. and 6:15 a.m. Plaintiff was also prescribed the
16 antibiotic drug Vancomycin during this hospital stay (Def. Exhibit 5 & 6; Medication
17 Administration Record at ¶1-3).

18 Plaintiff's vital signs were taken at 8:00 a.m. prior to his discharge on November 27,
19 2004. At that time, his body temperature and blood pressure were in the normal range and
20 his pulse was 122 which is above the normal range, but at 10:00 a.m. he was observed by a
21 nurse with his eyes closed and he was in no apparent distress (Def. Exhibit 5; Medical
22 Nursing Record at ¶11-12). At the time of his discharge, Plaintiff was very angry, told the
23 nurse he would "get even with her," and was witnessed by nursing staff climbing out of bed
24 and lifting the bed up and down (Def. Exhibit 7; Def. Walker discharge summary). Nursing
25 staff observed Plaintiff at 11:20 a.m. engaging in behavior to attempt to elevate his body
26 temperature to abnormal range to avoid being discharged (Def. Exhibit 7; Walker discharge
27 summary). Thereafter, Plaintiff was released from the hospital.

28

1  When Plaintiff arrived back at the hospital on November 27, 2004, Plaintiff
2  complained of a headache, weakness, vomiting and nausea with irregular vital signs (Amend
3  Compl at ¶4-D). His diagnosis upon admission was hypotension, bandemia and left bicep
4  cellulitis (Def. Exhibit 10 at ¶1). Plaintiff admitted that when he returned to jail that day he
5  took several inmates' doses of Seroquel, which caused his hypotension, and that he had done
6  exercise to elevate his fever (Def. Ex. 7; Discharge Summary of Walker at ¶1; Def. Exhibit
7  10). Defendant submitted hospital records which reflect that tests administered on Plaintiff
8  tested positive for Seroquel, which causes hypertension (Def. Exhibit 7 at ¶1; Def. Exhibit
9  10 at ¶1).

10  Defendant has submitted Plaintiff's medical records from Maricopa County Hospital
11  during Plaintiff's admittance from November 27, 2005 until his release on December 1, 2004
12  (Def Exhibits 2 through 13), which reflect that Plaintiff was provided with medication
13  throughout his hospitalization. Dr. Kapoor prescribed morphine for Plaintiff's pain on
14  November 27, 2004; Tylenol as needed at 2039 on November 27; Percocet 5/325 mg at 1300
15  on November 28; Percocet at 0300 on November 29; intravenous morphine at 0345 on
16  November 29; Flexeril, a muscle relaxant with some pain relief properties, was ordered for
17  Plaintiff at 0810 on November 29 by Dr. Leeper; Toradol, an anti-inflammatory medication
18  with pain-relieving qualities, was prescribed at 0800 on November 30 along with Vistaril,
19  a sedating anti-histamine; and Tylenol 650 mg every 4 hours as needed for pain at 2010 on
20  November 30, 2004 (Affidavit of Stander at ¶7; Def. Exhibit 12; Def. Exhibit 13).

21  Plaintiff was discharged on December 1, 2004. At the time of discharge, Plaintiff was
22  stable, normotensive and afebrile (Def. Exhibit 7 at ¶2). The discharge summary prepared
23  by Defendant Walker states that he spoke with the jail physician prior to discharging Plaintiff
24  and it was determined that the Plaintiff should be discharged to inpatient jail psychiatric (Def.
25  Exhibit 10; Discharge Instructions; Def. Exhibit 7 at ¶2).

26  Finally, Defendants submitted evidence that Plaintiff has a troubling pattern of
27  repeated admission and discharges from the hospital (Affidavit of Stander at ¶8). In June
28  2004, Plaintiff was admitted for four days to surgically remove necrotic tissue on his upper

1 left arm, which he claimed was due to a spider bite (Def. Exhibit 1 at ¶8).  In June 2004, 2 Plaintiff was admitted for five days for swallowing 32 AA batteries (Def. Exhibit 8). In 3 October 2004, Plaintiff was admitted for chest pain and shortness of breath and there was 4 evidence of septic pulmonary emboli (Def. Exhibit 9 at ¶2).  A CT scan of Plaintiff's upper 5 left extremity revealed an abscess. At that time, medical staff ordered a psychiatric evaluation 6 for Plaintiff to evaluate for possible malingering (Def. Exhibit 9 at ¶2). Prior to Plaintiff's 7 discharge, one of Plaintiff's roommates stated that he observed Plaintiff rubbing his own 8 feces in his wound, which the physician concluded is consistent with the bacteroides in his 9 blood. (Id.).  In July 2005, Plaintiff again underwent surgical incision and drainage of his 10 upper left arm, during which a foreign body was discovered under his skin at that site, which 11 was determined to be a small rolled up piece of foil (Affidavit of Stander at ¶9; Discharge 12 Summary MC1223-24).  Dr. Stander concluded in is his professional opinion that Plaintiff 13 has engaged in a pattern of deliberately causing himself harm in order to access extended and 14 extraordinary medical care either for the purpose of receiving pain medications or simply for 15 the purpose of obtaining temporary relief from prison environments (Def. Exhibit 1 at ¶10).

16 **B. Plaintiff's Evidence.**

17 Plaintiff has filed a Response (Dkt. #24) and has submitted medical records as well 18 as a signed Declaration.  Plaintiff relies on the Emergency Department report of Dr. 19 Horwood dated 11/26/04 as evidence that he should not have been released from the hospital 20 (Plf. Exhibit 1).  Plaintiff contends that his medical records establish that he had pain and 21 respiratory distress during the night before his release and this fact, combined with his 22 medical history, establish that he should not have been released from the hospital the next 23 morning (Response at ¶4-5).  Plaintiff also relies on a report regarding a prior hospitalization 24 on October 30, 2004 to establish that Defendant was aware of Plaintiff's medical history (Plf. 25 Exhibit 5).  Plaintiff has submitted the Discharge Summary Report of Plaintiff (Plf. Exhibit 26 9) as evidence that Defendant was aware of Plaintiff's previous hospital admissions and 27 symptoms, which were identical to those he experienced on November 26, 2004.  Plaintiff 28 claims that Defendant should have known that discharging Plaintiff would subject him to a

- 8 -

1  substantial risk of harm (Response at ¶5). Plaintiff disputes the fact that his vital signs were
2  normal upon discharge (Response at ¶9).

3  Plaintiff also contends that Defendant has animus towards Plaintiff, and he disputes
4  the relevance of Defendant's allegations that he was seen climbing out of bed and lifting the
5  bed up and down (Response at ¶7). Plaintiff argues that the material facts establish that he
6  was so sick that he was unable to walk when he was discharged on November 27, 2004
7  (Response at ¶8). Plaintiff refutes Defendants allegations that he took medication and
8  attempted to elevate his fever prior to discharge on November 27, 2004. Plaintiff claims that
9  he was transported back to the hospital approximately one hour and twenty five minutes after
10 his release from the hospital and therefore he had no time to take medication (Response at
11 ¶9).  Plaintiff also disputes Defendant's allegations that a patient saw Plaintiff rubbing stool
12 in his wound (Response at ¶10).

13 Finally, Plaintiff refutes Defendant's allegations that he received proper pain
14 management during his hospital admission from November 27 through December 1, 2004
15 (Response at ¶11).  Plaintiff clarifies in his reply that he is only alleging that he received
16 improper pain management from Defendant for the dates of November 30 to December 2,
17 2004 (Response at ¶11).  Plaintiff contends that he attempted to contact Defendant Walker
18 on numerous occasions to receive additional pain medication, but that Walker deliberately
19 withheld the medication.  Plaintiff has submitted as evidence the medication administration
20 records dated November 28 through November 30, 2004 (Plf. Exhibit 17).

21 Plaintiff contends that he has established that Defendant has a culpable state of mind,
22 he had knowledge of a substantial risk of harm to Plaintiff, and he intentionally denied and
23 delayed his medical care.  Accordingly, Plaintiff argues, Defendant should not be granted
24 summary judgment (Response at ¶13).

25 **C. Deliberate Indifference Standard.**

26 To state an Eighth Amendment claim, Plaintiff must show that Defendants were
27 deliberately indifferent to his serious medical needs. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104
28 (1976). To act with deliberate indifference, a prison official must both know of and disregard

- 9 -

an excessive risk to inmate health. Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). In the medical context, deliberate indifference may be shown by (1) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (2) harm caused by the indifference. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing Estelle, 429 U.S. at 104). A mere difference of medical opinion does not amount to deliberate indifference. Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).

To prevail on a claim involving choices between alternative course of treatment, a prisoner must show that the chosen course was medically unacceptable under the circumstances and was chosen in conscious disregard of an excessive risk to the prisoner's health. Toguchi, 391 F. 3d at 1057. Medical malpractice – negligence in diagnosing or treating a condition, or an inadvertent failure to provide adequate medical care – does not rise to the Eighth Amendment level. Id. ; Jett, 429 F.3d at 1096.

A complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of deliberate indifference under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. Estelle, 429 U.S. at 106. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. Wood v. Housewright, 900 F. 2d 1332, 1334 (9th Cir. 1990).

When a prisoner attempts to hold a prison employee responsible for deliberate indifference, the prisoner must establish individual fault. Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988). Sweeping conclusory allegations will not be sufficient to prevent summary judgment. Id. "The prisoner must set forth specific facts as to each individual defendant's deliberate indifference." Id. at 634. He must prove that the specific prison official was deliberately indifferent and that this indifference was the actual and proximate cause of the injury. Id.

**D. Discussion.**

**1. Plaintiff's Hospitalization from November 26 to November 27, 2004.**

At the outset, the Court notes that throughout Plaintiff's Response he confusingly references "Standard Affidavit" rather than Exhibits, and it is difficult to ascertain what specific exhibits Plaintiff is referencing. Moreover, many of the exhibits contain only a portion of a particular medical record or report and it is difficult to determine if the dates referenced in the exhibit coincide with the dates set forth in his argument. Additionally, although Plaintiff has submitted a Declaration (attached as Exhibits 6 and 14), he has failed to reference any specific information therein such as dates and times. The affidavit is merely his recollection of occurrences, rife with conclusory statements that are unsupported by evidence.

Even assuming, arguendo, that Plaintiff's Response did not contain the defects outlined above, Plaintiff has failed to adduce sufficient medical evidence to support his claim that Defendant deliberately denied or interfered with his medical treatment. Throughout his Response, Plaintiff has provided his subjective expectation of what should have been his course of treatment based on his past experiences in the hospital (Response at ¶4), but has provided no competent medical evidence to establish that Defendant's decision to discharge him on November 27, 2004 was a deviation from the standard of care. Plaintiff's belief that he should not have been discharged, combined with the fact that he was re-admitted later that day, is insufficient to create a material dispute of face as to whether Defendant was deliberately indifferent to Plaintiff's serious medical needs. Plaintiff has failed to show that the course chosen by Defendant was medically unacceptable under the circumstances and was chosen in conscious disregard of an excessive risk to Plaintiff's health. Toguchi, 391 F. 3d at 1057. Medical malpractice – negligence in diagnosing or treating a condition, or an inadvertent failure to provide adequate medical care – does not constitute an Eighth Amendment violation. Id.; Jett, 429 F.3d at 1096.

Defendant has provided substantial medical documentation in the form of written reports and medical records (Def. Exhibits 1 through13) which establish that from the time

1  of his admission to the hospital on November 26, 2004, Plaintiff was tested, monitored, and
2  medicated for an array of medical problems.  Plaintiff was prescribed Bactrim to heal the
3  infection in his arm (Def. Exhibit 4 at 2).  Defendant Walker addressed Plaintiff's complaint
4  of vomiting blood by performing a stomach lavage procedure.  The test revealed that no
5  blood was present in Plaintiff's stomach (Def. Exhibit 3 at ¶2).  Defendant performed an
6  electrocardiogram, which was determined to be normal (Def. Exhibit 4 at ¶2).  Plaintiff was
7  prescribed additional antibiotics upon release (Def. Exhibit 5 & 6).  Dr. Paul Stander, the
8  Chief Medical Officer at Banner Good Samaritan Hospital, concluded that in his medical
9  opinion there was nothing inappropriate about the decision to discharge Plaintiff on
10 November 27, 2004 (Def. Exhibit 1 at ¶12).

11 Defendant also submitted evidence that Plaintiff's vital signs were taken prior to
12 discharge on November 27, 2004.  Plaintiff's temperature and blood pressure were within
13 the normal range, his pulse was slightly elevated, but he was observed to be in no apparent
14 distress (Def. Exhibit 1 at ¶5).  Plaintiff has not produced any evidence to refute the nurses'
15 reports that his vital signs were within the normal range the morning of his release.  Nor is
16 Plaintiff himself competent to testify as to what his vital signs were on the morning of his
17 discharge.

18 A defendant does not act in a deliberately indifferent manner unless he knows of and
19 disregards an excessive risk to an inmate's health and safety.  Farmer, 511 U.S. at 837.  The
20 objective facts in the record prevent any reasonable finder of fact from drawing the inference
21 that the decision to discharge Plaintiff was a deviation from the standard of care.  To the
22 contrary, the evidence presented by Defendant conclusively shows that Defendant had no
23 notice of a substantial risk of serious harm to Plaintiff when he discharged Plaintiff from the
24 hospital.  Defendant is entitled to summary judgment as a matter of law on this claim.

25 **2. Plaintiff's Hospitalization from November 27 through December 1, 2004.**

26 Plaintiff claims that Defendant denied him adequate pain medication between the
27 dates of November 30 and December 2, 2004, which he appears to attribute to Defendant's
28 alleged animosity towards him (Response at ¶11).  Plaintiff contends that he was in so much

1  pain that he was unable to eat or have bowel movements (Response at ¶12). Plaintiff claims
2  that on November 29, 2004 he received Toradol, Flexeril, Tylenol and Percocet, yet the
3  medication administration record submitted by Plaintiff in support of this contention does not
4  reflect him receiving those medications on those specific dates (Plf. Exhibit 16). Plaintiff
5  contends that when he was transferred to Unit 41 at the hospital on November 30, 2004, he
6  was placed under the care of Defendant Walker. Plaintiff contends that Defendant reduced
7  his pain medication and provided only Tylenol, which was inadequate to relieve his pain.
8  The medication administration records submitted by Plaintiff reflects that he received
9  Tylenol, ferrous sulfate, Atarax and Phenergan on that date (Plf. Exhibit 20).

10  Although there are disputed facts as to what medications Plaintiff received and when
11  he received them, these facts are not material to the question of deliberate indifference to a
12  substantial risk of harm to Plaintiff. Plaintiff has failed to present any admissible evidence
13  that his pain management was unacceptable. Plaintiff has shown nothing more than his
14  disagreement with the course of treatment chosen by Defendant Walker. A mere difference
15  of medical opinion does not amount to deliberate indifference. Toguchi v. Chung, 391 F.3d
16  1051, 1058 (9th Cir. 2004). Where the Defendant has chosen one course of action and a
17  Plaintiff contends that another should have been chosen, the Plaintiff must show that "the
18  course of treatment the doctors chose was medically unacceptable under the circumstances"
19  and that the doctors "chose this course in conscious disregard of an excessive risk to
20  Plaintiff's health." Id. Other than his unsupported conclusions, Plaintiff has failed to
21  produce any evidence that the decision to alter his pain medication was medically improper.
22  Nor has he produced any evidence that he was harmed by the decision.

23  Defendant submitted evidence that on November 30, in addition to Tylenol, Plaintiff
24  was prescribed Toradol, an anti-inflammatory medication that has pain relieving qualities,
25  along with Visaril, an antihistamine that is sedating (Def. Exhibit 12; Physician Orders For
26  Admission; Affidavit of Stander at ¶7). The physician reports and nursing notes for the
27  duration of his hospitalization from November 27 through December 1 (Def. Exhibits 11
28  through13) do not support Plaintiff's allegations that his pain was left untreated. Defendant's

1  evidence establishes that all attending medical staff were responsive throughout his
2  hospitalization to Plaintiff's subjective reports of pain.
3      Plaintiff cannot establish that the relevant standard of care was violated merely
4  because he allegedly did not receive all the pain medications he requested.  The fact that
5  Plaintiff had been provided with stronger pain medication earlier in his admission and that
6  Plaintiff believed he should have continued to receive stronger medication does not raise an
7  inference that Plaintiff's pain management was handled other than in accordance with proper
8  medical norms. While Plaintiff may have disagreed with the pain management plan, his
9  subjective belief does not establish Defendant's deliberate indifference.  Farmer, 511 U.S.
10 at 834.
11     Moreover, there is no evidence in the record to establish that Defendant controlled the
12 pain medications that Plaintiff received from November 27 through December 1, 2004.
13 Without any evidence to establish that Defendant made the decision regarding Plaintiff's
14 medication, there is no basis for liability.
15     The objective facts in the record prevent any reasonable finder of fact from drawing
16 the inference that Dr. Walker acted with deliberate indifference.  Defendant is entitled to
17 judgment as a matter of law on this claim.
18 **IT IS ORDERED:**
19 1.     Defendants' Motion for Summary Judgment (Dkt. #20) is **granted**.
20 2.     The Clerk of Court shall enter judgment accordingly and terminate this action..
21 DATED this 19th day of March, 2007.

*[Signature: Daniel G. Campbell]*

David G. Campbell
United States District Judge

- 14 -